Vos and Graves v. The United Insurance Company.

[*469]    *ANDREW VOS AND JOHN B. GRAVES, *Plaintiffs in Error*, against THE UNITED INSURANCE COMPANY, *Defendants in Error*.(a)

Sailing for a port understood to be blockaded is not a breach of neutrality, so as to affect the warranty in a policy of insurance.

THIS cause came before the court on a writ of error from the supreme court. For the facts in the cause, and the opinion of the court, see *ante*, pp. 180—191.

(a) S. C. 1 Caines' Cas. in Error, vii.

*VAN VECHTEN, Senator. Two questions present [*470] themselves to my mind, as material for our consideration in the· present case.

1. Whether the master of the plaintiffs' vessel has made such an attempt to break a blockade, as to forfeit their neutral rights ? and,

2. Whether, admitting that he has not incurred such a forfeiture, the defendants are, under all the circumstances of this case, liable for any risk incurred beyond the voyage to Hamburgh ?

With respect to the first question, it appears to be the undisputed law of nations, that a breach of blockade works a forfeiture of vessel and cargo.

The precise point in the present case is, whether there was a breach of the blockade.

[*471]    *There is no room for doubt, that the vessel sailed from Gruxhaven with an intent to enter Amsterdam ; and it seems to be conceded on all sides, that the master knew of the investment of that port when he set out. The intent was certainly an unlawful one, and the act of sailing to carry it into effect, must be considered as an overt act towards the execution. If so, the vessel was captured in the prosecution of an unlawful effort to break the blockade. This unlawful procedure on the part of the master was at least an invitation to capture, and does not entitle the plaintiffs to the aid of favorable presumption against the insurers.

But I cannot stop here. The breach of a blockade, in my opinion, does not consist merely in coming to the line of the blockading squadron, and attempting to pass it. Such a construction would open a door for innumerable frauds, and

United States, (February, 1808,) held, that the sentence of a foreign court of admiralty, condemning a vessel for breach of a blockade, was conclusive evidence of that fact, as between the insurer and the insured. Marshall, Ch. J., Cushing, J., Washington, J. and Johnson, J. in the affirmative. Chase, J, and Livingston, J. contra. Todd, J. not having heard the argument, gave no opinion. Washington, J. and Johnson, J. were the only judges who appear to have stated the reasons for their opinions. (See also Fitzsimmons v. Newport Ins. Co. 4 Dallas, 185.)

The same question was lately brought before the supreme court of Massachusetts, but the result is not known.

expose belligerents to be deprived of all the material advantages of a blockade.

The most rational doctrine on the subject, I take to be, that forfeiture shall attach in every case, as for a breach of blockade, when a vessel is sailing for a blockaded port, with a notice of the blockade, unless the master proves expressly, that he had no design, either to break the blockade, or fraudulently to elude the blockading squadron. In the case before us, there is no such evidence, and, therefore, no such deduction can fairly be made in favor of the plaintiffs.

I lay out of the case our treaty with Great Britain, and the information given to the master at Cruxhaven, relative to turning vessels back for the first attempt to enter the blockaded port, without seizure.

The first is only applicable in cases where the master has no previous notice of the blockade, but cannot exempt him from the penalty annexed to a breach of the blockade, with full notice.

The second does not extend protection to vessels, the masters of which, with their eyes open, approach the line of blockade, for the purpose of breaking it. Besides, if *the blockading squadron had, from motives of [*472] courtesy to neutrals, adopted such a practice, I take it the master of the plaintiff's vessel had no right to run the risk of that courtesy being denied to him at the expense of the insurers. The risk he assumed was his own voluntary act, for which he is accountable to his employers, but which can attach no responsibility to the defendants.

With respect to the second question, I am equally clear, that according to the sound construction of the policy, the defendants are not liable for the risk incurred beyond Hamburgh.

The plain language of the contract and memorandum is, that the insurance, for the additional premium of 2½ per cent. was on a voyage from New York to Amsterdam, by the way of Hamburgh, for the purpose of ascertaining the fact whether Amsterdam was blockaded. If it was, it would

be dangerous to proceed to Amsterdam, and in that event the voyage was to terminate at Hamburgh, and the additional premium to be returned to the plaintiffs. To suppose that the insurers meant to insure against the risk of entering a blockaded port, is to bottom the contract on an unlawful basis, because the very intent thereof, in that case, must have been to indemnify the plaintiffs for the loss incident to a violation of the law of nations. If so, the contract would be absolutely void.

But the supposition that such was the meaning of the contract, is repelled by the precautions used by the plaintiffs themselves. If the defendants had assumed the risk of proceeding to Amsterdam, when in a state of blockade, why did the plaintiffs agree to pay an additional premium for first going to Hamburg to ascertain the danger arising from the reality of the blockade? for that was the danger to which they expressly referred. Why stipulate that the risk should end at Hamburgh, in case it should be found dangerous to proceed farther?

[*473]       *These precautions evince, to my complete satisfaction, that it was neither understood, nor intended between the parties, at the formation of their contract, that the defendants should incur any risk beyond Hamburgh, if it was there ascertained that Amsterdam was blockaded.

I am therefore of opinion upon the second question, that the capture of the plaintiffs' vessel and cargo, on the way from Hamburgh to Amsterdam, while the latter port was in a state of blockade, was a peril not within the policy.

The result is, that according to my opinion, the judgment of the supreme court must be affirmed, but so modified that the additional premium of $2\frac{1}{2}$ per cent. be returned to the plaintiffs.

GOLD, Senator. The question in this cause is, whether the sailing of the brig Columbia from Cruxhaven, with a destination for Amsterdam, and an understanding that it was blockaded, is a breach of the blockade, and a legal cause of capture and condemnation? The question may be qualified perhaps, with the addition of an intention to enter the Texel,

in the event only of the blockading squadron being blown
off the coast; so as to leave the port in fact, open for en-
trance.   There is nothing in the verdict, or the assumption
of facts, by Sir William Scott, as the grounds of his determi-
nation, to warrant the conclusion of an attempt to break
the blockade, any further than the same is supported by proof
of a sailing from Cruxhaven for Amsterdam.   Upon funda-
mental principles, on which our municipal code of criminal
law is established, mere intention, with some very peculiar
exceptions, is not made the subject of judicial animadver-
sion.   That the moral law, which arraigns intention, should
be adopted in the law of nations, with a greater latitude
than in our municipal system, is a subject of some surprise,
especially when the application is for the benefit of
*belligerents, and to the prejudice of neutrals.   In   [*474]
intention, there is nothing certain and permanent;
it is controlled by every reflection; it is changed, dropped,
and renewed by the occurrences of every hour; by the con-
stant vicissitudes to which the agent is subject.   The enter-
prize, on a nearer view, appals; the *locus penitentiæ* is em-
braced.   If there is an anticipation of the undertaking, by
advances towards the theatre of action, (as the sailing from
Cruxhaven in this instance,) how wide a space yet intervenes!
To the dominion of how many various causes is the inten-
tion subject, before the act could be completed!   The infor-
mation of every hour may change the destination; the re-
ceipt of counter instructions from the owner may arrest fur-
ther progress; the perils of the sea may overwhelm; the in-
formation received at Cruxhaven that induced the sailing,
may be contradicted; and, lastly, before the vessel may ar-
rive on the line of investment, the blockade may be, by in-
structions from the admiralty, withdrawn, or raised.   The
rule that the sailing with a destination for a blockaded port
is a breach of blockade, as urged upon the court, is undefin-
able in relation to distance between the port of departure and
that of destination, and will produce great uncertainty and
vexation.   Nothing is to be found in the verdict or facts
stated, or assumed in the sentence of the admiralty, from

which to infer the progress of the Columbia from Cruxhaven to the Texel ; Sir William Scott meets her at the threshold, at the port of departure, and pronounces the sailing with an intention of evading the blockade, to constitute the offence. These are his words. It is fairly presumable, that the ground thus taken by the judge, corresponded with the proof, and was as broad as the evidence would justify. The record in the cause presents no fact to warrant a contrary conclusion. No inference is to be made from the plaintiffs' communication by letter of the 27th June, that the defendants consented to an attempt to enter a blockaded [*475] port, as that letter closes with the observation *that the blockade might probably be withdrawn before the arrival of the vessel. Therefore, quite the contrary is rather to be supposed. It is unnecessary to give an opinion on the case of an actual attempt to enter a port, during the interruption of the blockade, by reason of the blockading squadron being blown off; as, in this case, no such attempt was made, nor is the fleet found to have been so blown off. I am therefore of opinion, that there is no authority or precedent binding on this court to warrant the rule adopted by the admiralty sentence in this cause; that such rule is opposed to essential principles, uncertain in its application and highly vexatious to neutrals ; that the principle of the late treaty between England and Russia is more propitious to the interests of commerce, and sufficiently favorable to the rights of belligerents, and merits high respect from all neutral powers ; and that, therefore, the judgment below ought to be reversed.

The majority of the court being of this opinion, it was thereupon ORDERED and ADJUDGED, that the judgment of the supreme court be reversed, and the record be remitted, &c.

Judgment of reversal.(a)(b)

(a) See *supra*, 191, n. (b.)

(b) [Old note.] See *Williams* v. *Smith*, 2 Caines' Rep. 1. *Liotard and others* v. *Graves*, 3 Caines' Rep. 226. *Schmidt* v. *United States Ins. Co.* 1 Johns. Rep. 249. *Suydam and Wyckoff* v. *The Marine Ins. Co.* 2 Johns.

Rep. 138. *Calhoun* v. *Ins. Co. of Pennsylvania*, 1 Binn. Rep. 293, 305. *Fitzsimmons* v. *Newport Ins. Co.* 4 Cranch, 185.

